**UNITED STATES**

**v.**

**Alberto PARAMO, Appellant.**

**No. 92–1861.**

United States Court of Appeals,
Third Circuit.

Argued May 4, 1993.

Decided July 7, 1993.

Sur Petition for Rehearing Aug. 6, 1993.

William A. DeStefano (argued), Christopher D. Warren, DeStefano & Warren, P.C., Philadelphia, PA, for appellant.

Michael J. Rotko, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Timothy R. Rice (argued), Asst. U.S. Atty., Philadelphia, PA, for appellee.

BEFORE: COWEN, ROTH, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

Defendant Alberto Paramo ("Paramo") appeals his conviction on five counts of money laundering in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(A)(i). Paramo claims that the evidence was insufficient to support the money laundering convictions, because it failed to establish that he conducted financial transactions with the "intent to promote the carrying on of . . . unlawful activity" under section 1956(a)(1)(A)(i). Paramo also claims that the district court erred by denying him a downward departure for substantial assistance. A court ordinarily may not depart downward for substantial assistance unless the government makes a motion pursuant to Sentencing Guidelines section 5K1.1. However, Paramo argues that the district court had authority to grant him a departure because the government purposefully refused to file a 5K1.1 motion to penalize him for pleading not guilty and exercising his right to trial on the money laundering counts.

We find sufficient evidence of money laundering to support Paramo's conviction. In addition, we hold that absent a motion by the government, the district court has authority to grant a downward departure for substantial assistance if the government's sole motive for withholding a 5K1.1 motion was to penalize the defendant for exercising his constitutional right to a trial. Because the record indicates that the district court might have erroneously believed it lacked such authority, we will vacate Paramo's sentence and remand for resentencing.

## I.

A jury convicted Paramo on all thirteen counts of an indictment charging, *inter alia*, five counts of mail fraud in violation of 18 U.S.C. § 1341 and five counts of money laundering in violation of 18 U.S.C.

§ 1956(a)(1)(A)(i).[1] Paramo's conviction stemmed from his participation in a scheme to embezzle Internal Revenue Service tax refund checks. The scheme was devised by Bonifacio Vega, a business tax examiner for the IRS. On five separate occasions, Vega arranged to have an IRS refund check issued to a fictitious payee and mailed to an address in New York City. Paramo retrieved each of the checks from a friend and forwarded them to his brother, Jaime Paramo ("Jaime"), who maintained an account at a bank in Philadelphia. Jaime deposited the checks and later withdrew the cash. After each check was cashed, the participants divided the proceeds, which totalled approximately $204,000.

Following his arrest, Vega approached the government and proffered a statement explaining the criminal enterprise. Jaime followed soon thereafter. Approximately one month later, Paramo also agreed to cooperate. Counsel for both parties agree that Paramo's proffer comported with the statements given by Vega and Jaime in most material respects, except as to the division of proceeds.

The government offered Vega, Jaime, and later Paramo an opportunity to enter into plea agreements. In return for cooperating with the government and pleading guilty to the charges against them, the government offered to file a motion for downward departure at sentencing pursuant to section 5K1.1 of the Sentencing Guidelines. Vega and Jaime accepted the agreement and elected not to proceed to trial. After the district court granted the government's motions for downward departures, Vega and Jaime received sentences of eighteen months and twenty-four months imprisonment, respectively.

Paramo, however, refused to plead guilty to the money laundering charges because he believed that the specified sections of the money laundering statute did not apply to his conduct. The government responded with a letter to defense counsel, stating: "This letter shall confirm the government's withdrawal of the proposed § 5K1.1 plea agreement offer based on your client's refusal to plead to money laundering, the most serious readily provable offense." App. at 12. The letter continued: "In addition, the government has serious reservations concerning the truthfulness of your client's ... proffer, which would preclude a § 5K1.1 plea." *Id.*

At trial, Paramo conceded most if not all of the factual predicates of the government's money laundering charges, but denied that these facts supported a conviction under the statute. Specifically, Paramo argued that the undisputed facts failed to support a finding that he participated in cashing the stolen checks "to promote the carrying on" of mail fraud. *See* 18 U.S.C. § 1956(a)(1)(A)(i) (1988). Paramo testified that the participants intended to steal only one check at any given time, and that neither he nor any of the other participants ever formulated an intent to steal a series of checks. Paramo also stated that the sole purpose of each check-cashing scheme was to pay bills and other personal expenses, and that none of the proceeds obtained from the earlier mail frauds were used to facilitate the subsequent ones. This testimony was consistent with testimony given by Vega and Jaime, both of whom testified for the government.

Defense counsel requested a jury instruction that "[i]t is not sufficient that the defendant be shown to engage in the financial transaction simply to obtain the proceeds of a prior crime.... The government must prove ... that the defendant engaged in the financial transaction to promote future criminal activity." App. at 33. The district court rejected the proposed instruction and instructed the jury that to obtain a money laundering conviction under section 1956(a)(1)(A)(i), the government had to prove beyond a reasonable doubt "that the Defendant acted with the intent to promote the carrying on of ... mail fraud." Supp.App. at 387. The district court explained that to act intentionally means to act "[w]ith the deliberate purpose of promoting, facilitating or assisting the carrying on of mail fraud." *Id.* Over strenuous objection by defense counsel,

---

1. Paramo was also charged with mail fraud and money laundering as an aider and abettor under 18 U.S.C. § 2.

the district court also gave the following supplemental instruction in response to a question from the jury:

> [I]t's for you to determine whether in this case, applying the definition that I've given you, whether the Defendant promoted or facilitated or assisted the carrying on the—carrying out of the past mail fraud— by depositing the check and engaging in the financial transaction.... [I] think you can see from my answer that .you can promote, facilitate or assist in ways other than—prospectively or in the future. It doesn't have to be a future mail fraud that is promoted, facilitated or assisted. It could be a past mail fraud. It can be an ongoing mail fraud....

Supp.App. at 425. The jury returned a guilty verdict on all counts of the indictment, including money laundering.

At the sentencing hearing before the district court, the government did not request a downward departure for .substantial assistance. Paramo claimed that *Wade v. United States*, —— U.S. ——, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), authorized the district court to grant a departure even absent a government motion, because the government had an unconstitutional motive for withholding the motion—to penalize him for exercising his right to a ·jury trial on the money laundering charges. Paramo argued that he gave assistance to the government equal to or greater than the assistance given by Vega and Jaime. He then pointed to the government's disparate treatment of him and the other defendants at sentencing as evidence of a vindictive motive. He also produced the government's letter to his lawyer, which confirmed the withdrawal of the proposed section 5K1.1 plea agreement "based on [Paramo's] refusal to plead to money laundering." App. at 12.

The government's responses to Paramo's claims were twofold. ·First, the government posited that withholding a substantial-assistance motion based on a defendant's refusal to plead guilty to certain charges would not be unconstitutional under *Wade*. The government argued that *Wade* prohibits only prosecutorial decisions motivated by race, religion, and "things of that nature." Supp.

App. at 475. Second, the government.stated that it refused to file a section 5K1.1 motion solely because Paramo failed to provide substantial assistance, not because he elected to go to trial. The government maintained that Paramo's assistance was insubstantial because he agreed to cooperate after two other participants in the scheme already had made complete proffers and then gave a dubious statement regarding the division of proceeds. The government also asserted that information supplied by Paramo regarding a putative fourth participant in the scheme was too vague to enable the government to locate the alleged co-conspirator.

The district court denied Paramo's motion for departure. Acknowledging first the government's claim that Paramo's assistance was not substantial, and then Paramo's claim that ·the government acted with an unconstitutional ·motive, the district court stated that it did not believe "that what the Government said in [the letter withdrawing Paramo's plea offer] is a Constitutionally impermissible reason as articulated in *Wade*." Supp.App. at 478. Paramo received a sentence of forty-six months imprisonment. This appeal followed.

## II.

■ Paramo claims that the evidence at trial failed to support his money laundering convictions under 18 . U.S.C. § 1956(a)(1)(A)(i). The standard of review for a claim of insufficient evidence is whether substantial evidence supports the jury's verdict. *United States v. Sturm*, 671 F.2d 749, 751 (3d Cir.), *cert. denied*, 459 U.S. 842, 103 S.Ct. 95, 74 L.Ed.2d 86 (1982). When deciding this issue, we consider the facts and all reasonable inferences following therefrom in the light most favorable to the government. *Id.*

Section 1956(a)(1)(A)(i) makes it unlawful to conduct a financial transaction involving the proceeds of unlawful activity "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(A)(i). Paramo concedes that by cashing the embezzled checks, he knowingly engaged in financial transactions involving proceeds of the unlawful activity of mail

fraud. Paramo argues, however, that the evidence was insufficient to establish that he cashed the checks with the "intent to promote the carrying on" of mail fraud.

Uncontradicted evidence shows that Paramo and the other participants spent their respective shares of the mail fraud proceeds on personal items for themselves and their family members. The government presented no evidence suggesting that any of the participants funnelled their cash proceeds back into the mail fraud scheme or purchased any equipment, devices, or other objects to assist them in continuing the scheme. Accordingly, Paramo concludes that the evidence failed to establish the requisite intent to promote the carrying on of mail fraud.

Paramo relies for support on *United States v. Jackson,* 935 F.2d 832 (7th Cir.1991). There, the defendant used cash proceeds from drug transactions to pay rent and to purchase telephone paging beepers and mobile car phones. The evidence showed that the defendant used the paging beepers as part of his continuing drug operation. Consequently, the court held there was sufficient evidence to support a finding that the defendant purchased the beepers to promote the carrying on of the drug scheme under section 1956(a)(1)(A)(i). *Jackson,* 935 F.2d at 841. The court reached a different conclusion, however, with respect to the rental payments and mobile phone purchases, because the evidence failed to show that they played any role in the ongoing criminal enterprise. Although they helped the defendant maintain his personal lifestyle, the court held that "more than this is needed to establish that they promoted his drug activities." *Id.*[2]

*Jackson* stands for the proposition that an intent to promote the carrying on of unlawful activity cannot be inferred from the mere fact that a defendant uses cash proceeds of such activity to pay personal expenses or purchase consumer goods. Here, however, the government presents a different theory. The government does not argue that Paramo

intended to promote the carrying on of mail fraud when he used cash derived from embezzled treasury checks to purchase personal items. Rather, the government contends that he intended to promote mail fraud at an earlier point: when he converted the embezzled checks into cash.

Each offense of mail fraud was legally completed as soon as the check in question was mailed to a fictitious payee in New York City. *See* 18 U.S.C. § 1341 (Supp. III 1991). Paramo testified, however, that he believed the embezzled checks would be worthless unless cashed. The government's theory, which it argued to the jury, is that because Paramo believed cashing the checks was necessary to realize any benefit from the mail fraud, the jury could infer he cashed each check to promote the carrying on of the antecedent fraud.

The court's holding in *United States v. Montoya,* 945 F.2d 1068 (9th Cir.1991), is on point. The defendant in *Montoya* received a bribe payment in the form of a check and then deposited the check. The jury convicted him of money laundering pursuant to section 1956(a)(1)(A)(i). On appeal, he argued that depositing the check did not promote the carrying on of bribery, because the bribery had been completed upon receipt of the check. The court rejected this argument and held there was sufficient evidence to support the conviction. *Id.* at 1076. It reasoned that because the defendant "could not have made use of the funds without depositing the check," the jury could find beyond a reasonable doubt that he made the deposit with the intent to promote the carrying on of bribery. *Id.*

Paramo argues that *Montoya* was wrongly decided. He contends that the Court of Appeals for the Ninth Circuit conflated two distinct subsections of the money laundering statute. Section 1956(a)(1)(A)(i) prohibits a defendant from engaging in financial transactions with the intent to promote the underly-

---

2. The court held, however, that sufficient evidence supported a conviction under 18 U.S.C. § 1956(a)(1)(B)(i). *Jackson,* 935 F.2d at 832. That section of the money laundering statute prohibits an individual from engaging in a financial transaction "knowing that the transaction is designed in whole or in part ... to conceal or disguise the nature, the location, the source, the ownership, or the control of the [unlawful] proceeds." Unlike the defendant in *Jackson,* Paramo was not charged with violating section 1956(a)(1)(B)(i).

ing unlawful activity. Section 1956(a)(1)(B)(i) prohibits financial transactions designed to conceal or disguise the nature, source, ownership or control of the unlawful proceeds. *See supra* Opinion at 1217 n. 2. The court in *Jackson* stated that "[t]hese two provisions are aimed at different activities, the first at the practice of plowing back proceeds of 'specified unlawful activity' to promote that activity, the second at hiding the proceeds of the activity." *Jackson,* 935 F.2d at 842. According to Paramo, the only provision violated in *Montoya* was section 1956(a)(1)(B)(i), because the defendant, a state legislator, cashed the check at issue for the purpose of disguising his bribe as a legitimate honorarium. Paramo maintains that the defendant did not violate section 1956(a)(1)(A)(i), because he never "plowed back" the proceeds of the check into a continuing bribery scheme. *See id.* Similarly, Paramo argues that the evidence here is insufficient to sustain his conviction under section 1956(a)(1)(A)(i), because it fails to show that he plowed back any cash proceeds to further the mail fraud scheme.

■ Paramo implicitly argues that, as a matter of law, a defendant cannot promote an already completed unlawful activity. We disagree. According to Black's Law Dictionary, as well as the definition offered by Paramo, to "promote" something is to "contribute to [its] growth ... or prosperity." Black's Law Dictionary 1214 (6th ed. 1990). Consistent with this definition, a defendant can engage in financial transactions that promote not only ongoing or future unlawful activity, but also prior unlawful activity. *See Montoya,* 945 F.2d at 1076; *cf. United States v. Skinner,* 946 F.2d 176, 177–78 (2d Cir. 1991) (affirming conviction of defendant who purchased money orders to pay for prior drug purchases).[3]

In the present case, Paramo understood that the embezzled checks would have been worthless unless cashed at a bank or otherwise exchanged for negotiable currency. Given this fact, the jury rationally could have found that the cashing of each check contributed to the growth and prosperity of each preceding mail fraud by creating value out of an otherwise unremunerative enterprise. Accordingly, the jury rationally could have concluded that cashing the checks promoted each antecedent fraud, and was specifically intended by Paramo to do so.

■ While we adopt the reasoning of *Montoya,* our holding also is consistent with the court's opinion in *Jackson.* When the court in *Jackson* stated that section 1956(a)(1)(A)(i) is "aimed" at the practice of plowing back proceeds of unlawful activity to promote that activity, it was attempting to explicate "the relationship between § 1956(a)(1)(A)(i) and (a)(1)(B)(i)." *Jackson,* 935 F.2d at 842. In particular, the court was expanding on a point made earlier in its opinion, that conduct punishable under one subsection typically would not also be punishable under the other. Nowhere, however, did the court suggest an intention either to delineate the universe of conduct prohibited under section 1956(a)(1)(A)(i), or to decide whether a defendant could violate that section other than by plowing back the proceeds of unlawful activity. Thus, *Jackson* cannot fairly be read to imply that a conviction under section 1956(a)(1)(A)(i) necessarily requires evidence that the defendant plowed back, or reinvested, criminal proceeds.

## III.

■ Paramo also claims that the district court erred by failing to grant his motion for a downward departure based on substantial assistance. Section 5K1.1 of the sentencing guidelines provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another per-

---

3. For this reason, we reject Paramo's claim that the district court erred by instructing the jury that they could convict Paramo if he promoted the carrying on of a "past mail fraud." We also reject Paramo's claim that the district court erred by failing to instruct the jury that they could not convict Paramo under section 1956(a)(1)(A)(i) if they found him guilty under section 1956(a)(1)(B)(i). Contrary to Paramo's suggestion, a finding of guilt under subsection (B)(i) is not a defense to a prosecution under subsection (A)(i). Because the government did not charge Paramo with violating subsection (B)(i), an instruction on the elements of that offense also might have confused the jury.

son who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1 (1991).[4] Although a motion by the government is a condition for departure under section 5K1.1, the Supreme Court held in *Wade v. United States*, —— U.S. ——, —— ——, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992), that federal district courts have authority to review a prosecutor's refusal to file a motion and to grant a remedy if they find the prosecutor acted with an "unconstitutional motive." By way of example, the Court stated that "a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion," or "if the prosecutor's refusal to move was not rationally related to a legitimate Government end." *Wade*, at ——, 112 S.Ct. at 1844. The mere claim that a defendant provided substantial assistance does not justify a remedy. *Id.* A defendant has no right even to an evidentiary hearing unless he makes a "substantial threshold showing" of a constitutional violation. *Id.*

Paramo argues that the district court had authority to depart downward because the government had an unconstitutional motive for refusing to file a 5K1.1 motion—to penalize him for exercising his constitutional right to trial on the money laundering charges. The Supreme Court has held that "while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). It is well settled that to "punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978), *quoted in Goodwin*, 457 U.S. at

372, 102 S.Ct. at 2488. Thus, it is an elementary violation of due process for a prosecutor to engage in conduct detrimental to a criminal defendant for the vindictive purpose of penalizing the defendant for exercising his constitutional right to a trial. *United States v. Meyer*, 810 F.2d 1242, 1246–47 (D.C.Cir.), *vacated*, 816 F.2d 695 (D.C.Cir.), and *reinstated sub nom. Bartlett on Behalf of Neuman v. Bowen*, 824 F.2d 1240 (D.C.Cir.1987), *cert. denied*, 485 U.S. 940, 108 S.Ct. 1121, 99 L.Ed.2d 281 (1988); *see Goodwin*, 457 U.S. at 372, 102 S.Ct. at 2488; *Bordenkircher*, 434 U.S. at 363, 98 S.Ct. at 668.[5]

At the sentencing hearing, the government suggested that a more narrow rule applies for purposes of a prosecutor's decision not to file a 5K1.1 motion. The government argued that the Court's holding in *Wade* authorizes a district court to review only allegations of discrimination on the basis of race, religion, or "things of that nature." Supp.App. at 475. This argument lacks merit. The Court in *Wade* stated that a district court may grant relief to a defendant if the prosecutor has "an unconstitutional motive" for withholding a 5K1.1 motion. *Wade*, —— U.S. at ——, 112 S.Ct. at 1844. By way of illustration, the Court explained that a defendant would be entitled to relief if a prosecutor refuses to file a substantial-assistance motion "say, because of the defendant's race or religion." *Id.* It does not follow that the Court, merely by listing two paradigms of impermissible criteria, intended to create a hierarchy of constitutional liberties for purposes of section 5K1.1 analysis. Rather, the court's initial use of the unqualified phrase, "an unconstitutional motive," strongly implies that any unconstitutional motive for withholding a substantial-assistance motion is subject to judicial review. This includes penalizing a defendant for exercising his consti-

---

4. We apply the guidelines that were in effect on October 14, 1992, the date of Paramo's sentencing. *United States v. Kopp*, 951 F.2d 521, 526 (3d Cir.1991).

5. Paramo suggests that such vindictiveness constitutes a violation of equal protection when it results in disparate sentencing decisions. The Supreme Court has rejected similar arguments

targeted at allegedly vindictive sentencing schemes, noting that "[t]o fit the problem ... into an equal protection framework is a task too Procrustean to be rationally accomplished." *Corbitt v. New Jersey*, 439 U.S. 212, 225, 99 S.Ct. 492, 500–01, 58 L.Ed.2d 466 (1978) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656 (1969)). We therefore interpret Paramo's claim of vindictiveness as alleging a due process violation.

tutional right to trial. *United States v. Easter*, 981 F.2d 1549, 1555 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2448, 124 L.Ed.2d 665 (1993).[6]

 Paramo contends that a remand is necessary because the district court adopted the government's erroneous position that a court lacks authority to depart under *Wade* where the only improper motive alleged by the defendant is that he or she was penalized for proceeding to trial. In rejecting Paramo's claim of prosecutorial vindictiveness, the district court ruled that it did not believe "that what the Government said in [the letter to Paramo's attorney] is a Constitutionally impermissible reason as articulated in *Wade*. I just do not believe that's what the . . . Supreme Court in *Wade* was talking about." Supp.App. at 478. Having carefully considered all the district court's statements in the context of both the preceding oral argument and the record as a whole, we find the court's ruling to be ambiguous. Specifically, we cannot say with any degree of certainty whether the district court believed that it had the authority under *Wade* to depart downward if it found that the government withheld a 5K1.1 motion to penalize Paramo for proceeding to trial. Because we hold that the court has such authority, a remand is appropriate. *See United States v. Brown*, 991 F.2d 1162, 1166–67 (3d Cir.1993).

IV.

 On remand, Paramo will have the burden of proving his claim of prosecutorial vindictiveness. *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir.1989), *cert. denied*, 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989). In general, there are two ways in which a defendant can prove a claim of vindictiveness. First, a defendant may use evidence of a prosecutor's retaliatory motive to prove actual vindictiveness. *See Goodwin*, 457 U.S. at 380 & n. 12, 384, 102 S.Ct. at 2492 & n. 12, 2494. Second, in certain circumstances, a defendant may show facts sufficient to give rise to a presumption of vindictiveness. *See id.* at 374, 102 S.Ct. at 2489.

 The presumption of vindictiveness is a prophylactic rule designed to protect a defendant's due process rights where a danger exists that the government might retaliate against him for exercising a legal right. *See Bordenkircher*, 434 U.S. at 363, 98 S.Ct. at 667–68; *United States v. Esposito*, 968 F.2d 300, 303 (3d Cir.1992). Because such a presumption "may operate in the absence of any proof of an improper motive," *Goodwin*, 457 U.S. at 373, 102 S.Ct. at 2488, courts will apply it only where there exists a "realistic likelihood of 'vindictiveness,'" *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974).[7] Even if a defendant establishes a realistic likelihood of vindictiveness, however, the government still has an opportunity to proffer legitimate, objective reasons for its conduct. *Esposito*, 968 F.2d at 305; *see Goodwin*, 457 U.S. at 374, 102 S.Ct. at 2489 (discussing *North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969)). "[W]here the government's conduct is attributable to legitimate reasons, we will not apply a presumption of vindictiveness." *Esposito*, 968 F.2d at 305.

 Assuming *arguendo* that Paramo could prove a realistic likelihood of vindictiveness, a presumption of vindictiveness still would not apply in this case because the government has proffered legitimate reasons, based on objective record evidence, for its refusal to file a 5K1.1 motion. The government maintains that Paramo's assistance was not substantial compared with the assistance

---

6. The government also erroneously suggests that *Wade* applies only where the government enters into a written agreement to file a 5K1.1 motion and then breaches the agreement. To begin with, we see no reason why only defendants who enter into plea agreements should enjoy the protection that the Constitution affords against prosecutorial vindictiveness. Additionally, since *Wade* itself did not involve a written agreement to file a 5K1.1 motion, *see United States v. Wade*, 936 F.2d 169, 170, 173 (4th Cir.1991), we doubt that the Court intended to make such an agreement a prerequisite for judicial scrutiny of alleged prosecutorial misconduct.

7. In *Blackledge*, the Supreme Court found a realistic likelihood of vindictiveness where a prosecutor reindicted a defendant on felony charges after the defendant appealed a conviction on misdemeanor charges. *Blackledge*, 417 U.S. at 27–29, 94 S.Ct. at 2102–03.

given by Vega and Jaime, because Paramo agreed to proffer a statement only after the others had given complete statements admitting their roles in the crimes. According to the government, Paramo also gave a conflicting account of the division of proceeds and failed to give significant aid in locating another alleged co-conspirator. Finally, the government notes that both Vega and Jaime gave extra assistance by testifying against Paramo. These contentions are all supported by evidence adduced at trial. Since the government has come forward with legitimate reasons explaining its failure to file a 5K1.1 motion, no presumption of vindictiveness applies. *See id.* at 305.

Because Paramo cannot rely on a presumption of vindictiveness, he must prove actual vindictiveness in order to prevail. *United States v. Wasman,* 468 U.S. 559, 569, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984). Such proof, as one court has noted, is "exceedingly difficult to make." *Meyer,* 810 F.2d at 1245. In *Goodwin,* the government indicted and successfully prosecuted the defendant on a felony charge after he requested a trial by jury on misdemeanor charges. Although the Supreme Court found no evidence to support a claim of actual vindictiveness, the Court declared that a charging decision generally is not impermissible unless it results "solely" from the defendant's exercise of a guaranteed legal right, rather than the prosecutor's ordinary assessment of the societal interest in prosecution. *Goodwin,* 457 U.S. at 380 n. 11, 102 S.Ct. at 2492 n. 11. The Court adopted such a strict standard of proof apparently to accommodate "the broad discretion held by the prosecutor to select the charges against an accused." *Id.*

 Prosecutors enjoy similarly broad discretion in deciding whether to file a 5K1.1 motion. The Sentencing Guidelines state that courts should give substantial weight to the government's evaluation of the extent of a defendant's assistance. *See* U.S.S.G. § 5K1.1, cmt. n. 3. Moreover, once the government determines that a defendant has substantially assisted, the government has the power, not a duty, to file a 5K1.1 motion. *Wade,* — U.S. at —, 112 S.Ct. at 1843. The government's mere "rational as-sessment of the cost and benefit that would flow from moving" is a permissible reason for withholding a motion. *Id.,* at —, 112 S.Ct. at 1844. On remand, therefore, Paramo must meet the same standard of proof that would apply in the context of a prosecutor's charging decision: To prove actual vindictiveness, he must show that the prosecutor withheld a 5K1.1 motion solely to penalize him for exercising his right to trial.

 To satisfy this burden, Paramo will have to establish that the government's stated justifications for refusing to file a 5K1.1 motion, though supported by objective evidence, are pretextual. *See Meyer,* 810 F.2d at 1245. Paramo cannot rely, however, solely on the government's letter withdrawing the 5K1.1 plea offer "based on [his] refusal to plead to money laundering." App. at 12. In *Bordenkircher,* the Supreme Court held that no due process violation occurs simply because a prosecutor threatens a defendant with more serious charges to induce a guilty plea, and then carries out that threat after the defendant refuses to plead guilty. *Bordenkircher,* 434 U.S. at 363–65, 98 S.Ct. at 668–69.

> While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas."

*Id.* at 364, 98 S.Ct. at 668. (quoting *Chaffin v. Stynchcombe,* 412 U.S. 17, 31, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973)) Although *Bordenkircher* involved a prosecutor's decision to bring more serious charges, the same reasoning applies to a decision not to make a 5K1.1 motion for a reduction in sentence. *See Alabama v. Smith,* 490 U.S. 794, 802, 109 S.Ct. 2201, 2206, 104 L.Ed.2d 865 (1989) ("a prosecutor may offer a 'recommendation of a lenient sentence or a reduction of charges' as part of the plea bargaining process") (quoting *Bordenkircher,* 434 U.S. at 363, 98 S.Ct. at 667)); *cf. Corbitt v. New Jersey,* 439 U.S. 212, 223, 99 S.Ct. 492, 499, 58 L.Ed.2d 466 (1978) (state legislature can extend leniency in sentencing in return for a guilty plea).

## V.

For the foregoing reasons, we will affirm the district court's judgment of conviction. We also will vacate Paramo's sentence and remand for further sentencing consistent with this opinion.

ROSENN, Circuit Judge, dissenting.

I believe that the defendant in this case did not engage in money laundering within the terms of 18 U.S.C. § 1956(a)(1)(A)(i) (1988) because he did not plough back the proceeds into purchases to promote the mail fraud scheme. Consequently, I would reverse his conviction, and on this count I therefore respectfully dissent.

## I.

The Money Laundering and Control Act provides that one is guilty of violating the statute if he or she:

(a)(1) knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity;

18 U.S.C. § 1956(a)(1)(A)(i) (1988).

Section 1956(a)(1)(B)(i) provides that it is unlawful for any person to engage in a financial transaction knowing that it is designed to conceal or disguise the nature, source, ownership, or control of the proceeds of specified unlawful activity.

To obtain a conviction under § 1956(a)(1)(A)(i), the Government must prove that the defendant (1) conducted a financial transaction that involved the proceeds of specified unlawful activity, (2) knew that the proceeds involved in the transaction were derived from some form of unlawful activity, and (3) participated in the financial transaction with the intent to promote or further that unlawful activity. 18 U.S.C. § 1956(a)(1)(A)(i); *United States v. Munoz–Romo*, 947 F.2d 170, 178 (5th Cir.1991).

The term "financial transaction" is defined as, *inter alia*, the deposit of a check in any federally insured bank. 18 U.S.C. § 1956(c)(3), (4). The phrase "specified unlawful activity" encompasses a broad array of federal and criminal offenses, including mail fraud. *Id.* at § 1956(c)(7). Therefore, there is no question that Paramo violated the first two prongs of § 1956(a)(1)(A)(i), a point that Paramo readily concedes.

Paramo claims, however, that the Government failed to carry its burden with respect to the third element of the crime, i.e., that the Government did not prove that he aided, abetted, and caused the deposit of the checks *with the specific intent to promote the mail fraud scheme.*

Paramo primarily relies upon *United States v. Jackson*, 935 F.2d 832 (7th Cir. 1991). In that case, the defendant operated a drug distribution operation. The cash proceeds from the illegal operation were deposited in a bank account, and the defendant drew checks against the account to buy telephone beepers and mobile phones. *Id.* at 841. The Government presented evidence that the beepers were used by the defendant to contact drug couriers in furtherance of his business. Therefore, reasoned the court, the defendant purchased the beepers with the intention of promoting the continuing criminal enterprise in violation of § 1956(a)(1)(A)(i).

The court continued:

We are, however, unable to view the mobile phone purchases ... as intended to promote the continued operations of [defendant's] continuing criminal enterprise under § 1956(a)(1)(A)(i). The government did not prove that the cellular phones played the same role—or indeed any role—in [defendant's] drug operations as the beepers.

*Id.*

Thus, the Seventh Circuit held that § 1956(a)(1)(A)(i) is not violated unless the defendant intends to use illegally obtained money to advance the illegal operation from which the money was derived because the provision in question is aimed at the "practice of plowing back proceeds of 'specified

unlawful activity' to promote that activity." *Jackson*, 935 F.2d at 842.

The *Jackson* court instead found the defendant guilty of violating § 1956(a)(1)(B)(i) because "[t]he conversion of cash into goods and services as a way of concealing or disguising the wellspring of the cash is a central concern of the money laundering statute." *Id.*

In the case *sub judice*, the majority concedes:

> The government presented no evidence suggesting that any of the participants funnelled their cash proceeds back into the mail fraud scheme or purchased any equipment, devices, or other objects to assist them in continuing the scheme.

Maj. Opinion at 1217. Therefore, argues Paramo, *Jackson* teaches that he did not "promote" the scheme by aiding, abetting, and causing the checks to be deposited in the bank.

The Government counters with *United States v. Montoya*, 945 F.2d 1068 (9th Cir. 1991). In that case, a former state legislator was convicted of accepting a bribe in the form of a check from an undercover FBI agent and depositing the check into his bank account. "According to [the defendant], the deposit of the check could not have 'promoted' the unlawful activity, namely the bribe, because the activity had been completed upon receipt of the check from the undercover FBI Agent." *Id.* at 1078.

The Ninth Circuit disagreed, affirming the trial court's holding that the defendant could not have made use of the bribery funds unless the check was deposited and thus the mere act of depositing the check was sufficient to establish an intent to promote. *Id.* The district court in the case *sub judice* adopted the reasoning of the Ninth Circuit, holding that depositing the checks constituted promotion of the mail fraud because it

provided the defendants with the only way possible to convert otherwise worthless checks into cash.

The majority in this case adopts the reasoning of *Montoya*, holding that Paramo is guilty of promoting the fraud because the checks would have been worthless had Paramo failed to cash them. Moreover, the majority claims that this case is distinguishable from *Jackson*:

> Here, however, the government presents a different theory [from *Jackson*]. The government does not argue that Paramo intended to promote the carrying on of mail fraud when he used cash derived from embezzled treasury checks to purchase personal items. Rather, the government contends that he intended to promote mail fraud at an earlier point: when he converted the embezzled checks into cash.

Maj. Opinion at 1217. Finally, the majority concludes that a person can promote not only future or ongoing unlawful activity, but also prior unlawful activity. Opinion *Id.* at 1218. I believe that such a conclusion is faulty, and I would adopt the Seventh Circuit's analysis in *Jackson*.

According to Black's Law Dictionary, to "promote" something is to "contribute to [its] growth ... or prosperity." Black's Law Dictionary 1214 (6th ed. 1990). It seems fundamental that one can only contribute to the growth of a venture that is ongoing or to be conducted in the future: It does not logically follow that one can promote an enterprise that has already terminated.[1]

Moreover, as the *Jackson* court recognized, a person promotes a scheme only when he or she ploughs back the proceeds thereof to purchase implements, such as beepers, to further the illegal enterprise. However, as in the case *sub judice*, when a person simply uses illegally obtained funds to purchase per-

---

1. The Government alternatively argues that the defendants gained the confidence and inclination to further defraud the IRS each time Paramo aided, abetted, or caused a check to be cashed, thus promoting the illegal scheme. This argument is wide of the mark because the issue is whether there was sufficient evidence that Paramo acted with an intent to promote the scheme *at the time the checks were cashed.* 18 U.S.C.

§ 1956(a)(1)(A)(i) (the defendant must conduct a financial transaction "with the intent to promote the carrying on of specified unlawful activity."). Any confidence that the defendants may have gained as a result of obtaining the proceeds of the checks came about after the checks were cashed and therefore after the crime with which Paramo is charged.

sonal items, such purchases do not constitute promotion of the crime. Simply enjoying the fruits of illegal conduct does not further promote that conduct; rather, that is part of the original crime for which the defendant has typically already received punishment. To justify additional punishment, there must be promotion of future criminal conduct, rather than attainment of the fruits of past criminal conduct.

It is undisputed that Paramo defrauded the IRS. Moreover, Paramo does not take issue with the punishment that he received for committing that crime. However, he did not aid, abet, and cause the checks to be cashed in order to buy implements to commit further fraudulent schemes; rather, he paid bills and bought personal items. Therefore, it is duplicitous to punish him for simply retrieving the money that he stole absent an intent to promote future illegal schemes with such proceeds. *See Jackson*, 935 F.2d at 842 (section 1965(a)(1)(A)(i) is aimed at the "practice of plowing back proceeds of 'specified unlawful activity' to promote that activity.").

Although Paramo may be guilty of concealing the proceeds in violation of § 1956(a)(1)(B)(i), he was not charged with that crime. Moreover, "[t]hese two provisions are aimed at different activities, the first at the practice of plowing back proceeds of 'specified unlawful activity' to promote that activity, the second at hiding the proceeds of the activity." *Jackson*, 935 F.2d at 842.

In sum, there was not sufficient evidence to convict Paramo of aiding, abetting, and causing money laundering, and thus his conviction on that count must be reversed. I would affirm his conviction on all other counts.

### SUR PETITION FOR REHEARING

Aug. 6, 1993.

Before SLOVITER, Chief Judge; BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ROTH, LEWIS and ROSENN *, Circuit Judges.

* As to panel rehearing.

The petition for rehearing filed by appellant having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

Judge BECKER, Judge STAPLETON, Judge HUTCHINSON and Judge ALITO would have granted rehearing in banc.