83 F.3d 429
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
George R. GURS, Defendant-Appellant.
 No. 93-30261.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 16, 1995.
Decided April 25, 1996.
 
 Before: WALLACE, D.W. NELSON and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant-Appellant George Gurs was charged with operating a fraudulent real estate investment scheme from late 1986 through 1991. Following a jury trial, Gurs was convicted of multiple counts of mail fraud, interstate transportation of stolen property, using a false name, and money laundering. The district court sentenced Gurs to a term of eight years. Parallel to the criminal proceedings, the government successfully prosecuted civil and administrative forfeiture proceedings against several properties purportedly owned by Gurs.
 
 
 3
 Gurs's appeal asserts four general categories of error: (1) violation of his double jeopardy rights; (2) improper denial of his suppression motion; (3) insufficient evidence and erroneous jury instructions with respect to certain counts; and (4) misapplication of the Sentencing Guidelines. We affirm.
 
 DISCUSSION
 I. DOUBLE JEOPARDY
 A. Judicial Forfeiture
 
 4
 In the civil judicial forfeiture proceedings against four real properties, the government moved to dismiss Gurs's claims and answers because he did not own the property and therefore lacked standing. After Gurs failed to file an opposition, the district court granted the government's motion and dismissed Gurs's claims.
 
 
 5
 By dismissing Gurs for lack of standing, the district court resolved Gurs's stake in the case without determining the issue on the merits, i.e. whether the property was traceable to property involved in a violation of the money laundering statute. See 18 U.S.C. § 981(a)(1)(A). Therefore, jeopardy never attached with respect to Gurs, and Gurs cannot claim to have been punished by the eventual forfeiture of the real property. Serfass v. United States, 420 U.S. 377, 388-89 (1975). For the same reason, Gurs's failure to file a claim or answer to the civil complaint against a ski boat and certain jewelry precludes him from raising a double jeopardy claim based on the forfeiture of those properties.
 
 B. Administrative Forfeiture
 
 6
 In addition to the judicial forfeiture proceedings, the government also filed administrative forfeiture proceedings against two boats and three cars. With respect to these proceedings, Gurs either failed to file a claim at all, or failed to perfect his claim by filing the requisite cost bond. Furthermore, despite being given the opportunity to submit proof of financial inability in lieu of a cost bond pursuant to 19 C.F.R. § 162.47, Gurs failed to file a financial affidavit.
 
 
 7
 When no claim is filed or cost bond given within the specified time period, 19 U.S.C. § 1609(a) permits the government to treat property subject to administrative forfeiture proceedings as if it had been "abandoned to the United States." Because Gurs effectively abandoned the three cars and boat to the government by failing to file the requisite cost bond, the administrative forfeiture of that property did not constitute "punishment" for double jeopardy purposes. United States v. Cretacci, 62 F.3d 307, 310-11 (9th Cir.1995).
 
 
 8
 We reject Gurs's argument that requiring him to file a financial affidavit in lieu of a cost bond forced him to choose between his right against self incrimination and his right against double jeopardy. One's double jeopardy right is not a right to preclude subsequent criminal proceedings by ensuring that jeopardy attaches in a prior civil proceeding, but a right not to be subject to a second proceeding if jeopardy has in fact attached in a former proceeding. See Simmons v. United States, 390 U.S. 377, 394 (1968). Thus, the dilemma Gurs faced was not unconstitutional because it did not require choosing between two constitutional rights. See United States v. Clawson, 831 F.2d 909, 911-12 (9th Cir.1987), cert. denied, 488 U.S. 923 (1988) (holding Simmons inapplicable when defendant filed affidavit of ownership in support of motion for return of property because defendant was not forced to choose between constitutional rights).
 
 
 9
 We also reject Gurs's argument that a finding of abandonment on the facts of this case would violate the Equal Protection Clause. See Wiren v. Eide, 542 F.2d 757, 763 (9th Cir.1976). It was Gurs's decision not to disclose his finances, rather than his indigency, that prevented him from pursuing his claims against the property, and the Equal Protection Clause is not implicated.
 
 
 10
 Lastly, we reject Gurs's argument that the failure to file the requisite bond must be excused due to the deprivation of counsel. Because no imprisonment is authorized by any of the administrative or judicial forfeiture statutes utilized by the government, Gurs had no Sixth Amendment right to counsel in the forfeiture proceedings. United States v. $292,888.04 in U.S. Currency, 54 F.3d 564, 569 (9th Cir.1995). Moreover, to the extent a right to counsel may arise under 18 U.S.C. § 3006A(c), Gurs admits that his attorney in the civil cases did not seek to be relieved until March 27, 1992, well after the critical time period in January during which Gurs was required to file his bond or affidavit.
 
 
 11
 Because Gurs was dismissed from the judicial forfeiture proceedings for lack of standing, and because he failed to perfect his claims in the administrative forfeiture proceedings, Gurs's criminal conviction does not offend the Double Jeopardy Clause of the Fifth Amendment.
 
 II. MOTION TO SUPPRESS
 A. Validity of the Warrant
 
 12
 The challenged warrant commanded the executing officers to seize:
 
 
 13
 [a]ny and all records relating in any way to an entity operated by George Gurs known as Great American Property Company, and the activities of George Gurs and Great American Property Company, as they relate to an investment program involving the purchase and sale of real estate....
 
 
 14
 The warrant proceeded to provide a nonexclusive list of the type of records that might be found, and concluded by defining "records" as "includ[ing] hard copy paper records and computer disks or hard disk storage devices, and associated hardware required for access to them."
 
 
 15
 Gurs argues the warrant was overbroad because it provided for the seizure of an entire computer disk or even an entire computer when probable cause extended only to certain business-related files contained on the disk(s). To have been valid, argues Gurs, the warrant should have provided for review of the hard drives on-site and seizure of only those files that were relevant.
 
 
 16
 Even were we to find that the warrant's authorization of the seizure of "computer disks or hard disk storage devices," rather than merely the information contained on such disks, was overbroad, we conclude that the executing officers had reasonable grounds for believing that the warrant was properly issued, and the exclusionary rule does not apply. United States v. Leon, 468 U.S. 897, 922-23 (1984).
 
 B. Execution of the Warrant
 
 17
 Although Gurs asserts that the search exceeded the scope of the warrant, his arguments on this issue essentially revert to his argument that the warrant itself was overbroad. Because the actual warrant authorized the seizure of "computer disks or hard disk storage devices, and associated hardware required for access to them," the execution of the warrant did not exceed its scope. Furthermore, it was reasonable for the executing officers to seize the hardware and search the hard drives in a secure location. The only alternative would have been to secure Gurs's home and search the computers there. This however, could have taken days, and would have been unreasonably intrusive in its own right. Lastly, it was reasonable for the officers to look at files that were not "flagged" through the "key-word" system. Just because a file does not contain a particular word or combination of words does not mean that the document is outside the scope of a search.
 
 
 18
 The district court's denial of Gurs's suppression motion was not erroneous.
 
 
 19
 III. SPECIFIC CHALLENGES TO COUNTS OF CONVICTION
 
 A. Counts 1-14 (Mail Fraud)
 
 20
 At trial, Gurs contended that many of the "misrepresentations" relied upon by the government to establish mail fraud violations were merely expressions of opinion. In this regard, Gurs requested the district court to instruct the jury that: "An actionable misrepresentation must relate to fact and cannot be based on an expression of opinion or a prediction." This language was taken directly from Bulgo v. Munox, 853 F.2d 710, 716 (9th Cir.1988), a civil case.
 
 
 21
 Gurs argues that the failure to give the requested jury instruction requires reversal of his convictions for mail fraud. However, because the "good faith" instruction given by the district court adequately covered Gurs's asserted defense that the "misrepresentations" were merely honestly held opinions that turned out to be mistaken, the failure to give Gurs's instruction was not error. See United States v. Gay, 967 F.2d 322, 328-29 (9th Cir.), cert. denied, 113 S.Ct. 359 (1992) (holding that refusal to give instruction on definition of "puffing" was not error because instruction on "good faith" defense adequately conveyed the defendant's message).
 
 B. Counts 24-27 (False Name)
 
 22
 With respect to his convictions for using a fictitious name in violation of 18 U.S.C. § 1342, Gurs first argues that the district court's refusal to give his instruction requiring the use of the fictitious name to be material was error because, without it, the instruction defining § 1342 misstated the law. Nowhere, however, does § 1342 expressly or impliedly require the false name to be "material to the venture." Thus, it was not error for the district court to refuse Gurs's materiality instruction. Gurs also argues, in passing, that differences in standards between § 1341 (which requires materiality) and § 1342 (which does not) confused the jury and deprived him of a fair trial. Thus, argues Gurs, the denial of his "pretrial motion to dismiss for multiplicity or to elect counts" was erroneous. Gurs has not, however, demonstrated any potential or actual jury confusion.
 
 
 23
 Lastly, Gurs argues that it was error for the district court to refuse his instruction on the Oregon Constitution's right to adopt the name of one's choosing. This right, argues Gurs, limits one's liability for violating § 1342, which only prohibits use of a name that is not one's "own proper name." However, as Gurs himself acknowledges, one may call himself what he chooses under Oregon law only so long as it is not for a fraudulent purpose. See, e.g., State v. Ford, 172 P. 802, 803-04 (Or.1918). To the extent Oregon law contravenes § 1342, it must yield to the Supremacy Clause. Thus, it was not error for the district court to refuse Gurs's instruction on the Oregon Constitution.
 
 C. Counts 28-37 (Money Laundering)
 
 24
 Gurs was convicted of twenty counts of money laundering in violation of 18 U.S.C. § 1956, divided into two groups: counts 28-37 were based on the depositing of investors' checks into GAP accounts, and counts 38-47 were based on the drawing of checks from GAP or Gurs's accounts to pay mortgages, vehicle loans, or boat loans.
 
 1. Instruction on elements
 
 25
 Gurs argues that the court's instruction on the elements of money laundering (and its rejection of his proposed instruction) was improper because it enabled the jury to convict him based on open and ordinary commercial transactions. The jury instruction given by the district court correctly and accurately stated the elements of money laundering under § 1956(a). While Gurs's proposed instruction was for the most part a correct statement of the law, it would have been merely duplicative of the instruction given. See United States v. Garcia, 37 F.3d 1359, 1364 (9th Cir.1994), cert. denied, 115 S.Ct. 1699 (1995) (holding that instruction very similar to the instruction in this case "fairly presented the elements of the money laundering statute" and was therefore not erroneous).
 
 2. Sufficiency of evidence
 
 26
 Gurs' argument that his conduct did not amount to money laundering as a matter of law is misplaced. For counts 28 to 37 Gurs was charged with "promoting" under § 1956(a)(1)(A)(i), not with "concealing" under § 1956(a)(1)(B)(i). There is no requirement that the government show any concealment or effort to avoid detection in order to satisfy the "promoting" prong of § 1956(a)(1)(A)(i). United States v. Montoya, 945 F.2d 1068, 1076 (9th Cir.1991). Rather, the government only need show that the transaction "contribute[s] to [the scheme's] growth ... or prosperity." United States v. Paramo, 998 F.2d 1212, 1218 (3d Cir.1993), cert. denied, 114 S.Ct. 1076 (1994) (quoting Black's Law Dictionary 1214 (6th ed. 1990)).
 
 
 27
 The evidence at trial was sufficient to establish that Gurs deposited investors' fraudulently-obtained money, and then used the proceeds to continue to operate the scheme and make promised payments to prior investors. It was not irrational, then, for the jury to find that Gurs made the deposits "with the intent to promote the carrying on of" the fraud. Therefore, there was sufficient evidence to convict Gurs of counts 28 to 37. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 28
 3. Failure of instruction to distinguish between counts
 
 
 29
 The district court instructed the jury that they could convict Gurs if they found either "promoting" (§ (A)(i)) or "concealing" (§ (B)(i)). For counts 28 to 37, however, the indictment only charged Gurs with "promoting" under § 1956(a)(1)(A)(i). Gurs argues that the instruction was erroneous because it improperly broadened the indictment, thereby violating his Fifth Amendment right to be tried only on the grand jury's indictment. See United States v. Miller, 471 U.S. 130, 134-35 (1985); United States v. Olson, 925 F.2d 1170, 1174-75 (9th Cir.1991).
 
 
 30
 Gurs never made this objection in the district court, and therefore, "our review is limited to determining whether the instruction amounted to plain error." Olson, 925 F.2d at 1174.
 
 
 31
 Because the evidence presented at trial, as well as the government's argument to the jury, focused almost exclusively on "promoting," Gurs has failed to demonstrate that the district court's instructional error amounted to plain error. See Olson, 925 F.2d at 1175.
 
 D. Counts 38-47 (Money Laundering)
 
 32
 Gurs argues that there was insufficient evidence to conclude that the transactions involved in counts 40, 41, and 44-47 were undertaken with the intent to promote the "specified unlawful activity," required in § 1956(a)(1). Specifically, with respect to four of these counts, Gurs contends that there was insufficient evidence to support the convictions because the purchased properties were not involved in the real estate joint venture program that was the subject of the mail fraud convictions. With respect to the remaining counts, Gurs contends that there was insufficient evidence to infer intent to promote, despite the fact that he used the purchased properties to impress potential investors.
 
 
 33
 Gurs's first contention fails because § 1956 does not require that the "specified unlawful activity" referred to in subsection (a)(1)(A)(i) be a conviction. Rather, it only has to be "an act constituting an offense" under § 1341 (mail fraud). See §§ 1956(c)(7)(A); 1961(1). Construing the evidence in the light most favorable to the prosecution, Jackson v. Virginia, 443 U.S. at 319, a rational trier of fact could have found beyond a reasonable doubt that the real properties, boat, and car at issue were purchased with the intent to promote the carrying on of the mail fraud evidenced by the three letters.
 
 
 34
 Gurs's second contention likewise fails. Construing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Gurs's image was a necessary ingredient in his scheme. Thus, it was not irrational to infer that he purchased expensive cars and boats to further his image, thereby promoting his scheme. See Paramo, 998 F.2d at 1218 (defining "promoting" as "contribut[ing] to [the scheme's] growth ... or prosperity").
 
 
 35
 Thus, there was sufficient evidence to convict on Counts 40-41 and 44-47.
 
 IV. SENTENCING
 
 36
 A. Applicability of Money Laundering Provision
 
 
 37
 Gurs argues that because the conduct for which he was convicted was atypical with respect to the "normal" money laundering crime, the district court should have looked solely to the guideline provision relating to fraud (§ 2F1.1), and not the harsher provision relating to money laundering (§ 2S1.1).
 
 
 38
 We find that the district court correctly applied the money laundering guideline provision to Defendant's convictions. See United States v. Rose, 20 F.3d 367, 375 (9th Cir.1994) (rejecting argument similar to Gurs's). Nor do we agree with Gurs that the government is guilty of "indictment manipulation" similar to that found in United States v. Lieberman, 971 F.2d 989, 998 (3d Cir.1992). Unlike the embezzlement and tax evasion crimes involved in Lieberman, mail fraud does not always amount to money laundering, which requires the additional element that the defendant use the fraudulently obtained money to promote the carrying on of the fraudulent scheme. See § 1956(a)(1)(A). The Lieberman rationale is therefore inapplicable.
 
 B. "Loss" (§ 2F1.1) and "Value" (§ 2S1.1)
 
 39
 Gurs argues that the district court's calculation of "loss" under § 2F1.1 and "value" under § 2S1.1 as the total amount of cash paid by investors over the course of the scheme less the amount of cash actually returned to investors is erroneous because it fails to account for the value of the property purchased.
 
 
 40
 While the actual loss to investors was, at the time of sentencing, clearly less than the $5 million figure calculated by the district court, the court was required to use the greater of the actual loss or the loss Gurs intended to inflict. U.S.S.G. § 2F1.1 Commentary n. 7. A court "need only make a reasonable estimate of the loss, given the available information." Id. n. 8.
 
 
 41
 While Gurs cites many facts that he claims support a finding of a lesser amount of intended loss, none of them demonstrate the district court's finding to be clearly erroneous. Accordingly, we will not disturb the district court's calculation. See Concrete Pipe & Prod. v. Const. Laborers Pension Trust, 113 S.Ct. 2264, 2280 (1993) ("Review under the clearly erroneous standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.' ") (citation omitted).
 
 
 42
 Likewise, the district court did not clearly err in considering the "value" of the money laundered to be the entire amount of funds received from investors. Gurs contends that the calculation of value was erroneous because, like the fraud loss, it should have been reduced by the value of the property the investors retained. However, even though the investors might still have something of value, that does not undermine the district court's findings that all of the money was obtained by fraud, and all of it was involved in financial transactions undertaken with the intent to promote the fraudulent scheme.
 
 
 43
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3