PLEUS, J.
Police observed Dallas sell a piece of crack cocaine to a woman for $4. He fled with the cash but was eventually arrested and convicted of delivery of cocaine and unlawful transportation of currency. He appeals the latter conviction, arguing that the trial court should have granted his motion for judgment of acquittal because the State failed to present any evidence that he transported the cash with the intent to promote unlawful activity. We agree and therefore reverse that conviction.
Facts
Dallas was charged by information with delivery of cocaine within 1000 feet of a childcare facility and unlawful transportation of currency. At trial, Orange County Sheriffs Deputy Andrew Williams testified that he saw Dallas and Karla Reed, both known to him, walking together on Ivy Lane. Upon reaching a bus stop, Dallas reached into his mouth, pinched a small item and placed it into Reed’s hand. Deputy Williams noted that drug dealers commonly hide crack cocaine in their mouths so they can swallow it if confronted by police. Reed then handed Dallas some rolled up dollar bills and crossed the street. Williams stopped Reed and observed crack cocaine in her hand. An FDLE analyst testified that the substance was in fact cocaine. As he was arresting Reed, Williams saw Dallas run away. Williams called additional units and Dallas was eventually arrested.
Dallas moved for judgment of acquittal on the unlawful transportation of currency count, arguing that the State failed to present any evidence that he had transported currency with unlawful intent. The trial court denied the motion on the ground that the officer’s experience in drug transactions was sufficient to allow the charge to go to the jury.[1] The jury found Dallas guilty of delivery of cocaine and unlawful transportation of currency. He was sentenced to four years in prison on each count, running concurrently. Dallas timely appealed.
Analysis
Dallas was charged with violating section 896.101(3)(b)l., Florida Statutes (2007), which makes it unlawful for a person to “transport or attempt to transport a monetary instrument or funds with the intent to promote the carrying on of specified unlawful activity.” A “specified unlawful activity” means any crime specified in the RICO statute, including drug offenses in Chapter 893. The State’s theory at trial and on appeal is that in fleeing from police, Dallas transported $4 in currency with the intent to promote the delivery of cocaine that he had just committed. Dallas argues that the statute does not *1064 encompass an intent to promote a crime that has already been committed.
In Harper v. State, 567 So.2d 28 (Fla. 5th DCA 1990), the defendant carried cash to purchase drugs from an undercover police officer. We rejected the defendant’s claim that his convictions for unlawful purchase of a controlled substance and unlawfully transporting funds with intent to promote a specified unlawful activity violated double jeopardy. We reasoned that the two offenses had different elements, were based on different acts, and were aimed at different evils. Dallas argues that Harper exemplifies the type of conduct prohibited under the statute: transporting money to commit a future crime.
The State argues that because no Florida case has addressed the issue of whether the statute includes transporting money to promote past crimes, this Court should look to federal cases dealing with that issue under the federal money laundering statute, from which the Florida statute was adopted. Specifically, the State cites three federal cases holding that Title 18 United States Code, Section 1956, encompasses the act of accepting and negotiating or depositing a check derived from the proceeds of illegal activity. United States v. Valuck, 286 F.3d 221, 227 (5th Cir.2002); United States v. Bencs, 28 F.3d 555, 562 (6th Cir.1994); United States v. Paramo, 998 F.2d 1212, 1218 (3d Cir.1993). For example, in Paramo, the court rejected the defendant’s argument that one cannot promote an already completed illegal activity. It noted that the definition of “promote”— to contribute to an activity’s growth or prosperity — includes not only ongoing and future activity but also prior activity. Based on this reasoning, the court upheld the defendant’s money laundering convictions for cashing checks from the proceeds of past mail fraud because such actions created value out of an otherwise unre-munerative enterprise. 998 F.2d at 1218.
In reply, Dallas points out two problems with the State’s reliance on these federal cases. First, he correctly notes that federal law is in conflict on this issue. Not all federal circuits adhere to the position that the federal money laundering statute criminalizes transactions that promote prior criminal activity. In fact, the court in Valuck noted this split of authority, acknowledging the following cases taking a contrary position:
United States v. Jolivet, 224 F.3d 902, 909 (8th Cir.2000) (reversing promotion conviction because subsequent activity cannot “promote the carrying on of an already completed crime”), and United States v. Heaps, 39 F.3d 479, 486 (4th Cir.1994) (expressly rejecting broad statutory interpretation employed by Third and Ninth Circuits as inconsistent with congressional intent). Cf. United States v. Calderon, 169 F.3d 718, 722 (11th Cir.1999) (questioning whether the decisions of the Third, Sixth, and Ninth Circuits “were rightly decided,” but not deciding the issue).
286 F.3d at 227 n. 5. For example, in Heaps, abrogated on other grounds, United States v. Villarini, 238 F.3d 530 (4th Cir.2001), the defendant’s wife received payment via Western Union for illegal drugs sold by the defendant. She took the money home and placed it in a box. The defendant was convicted of selling drugs but the appellate court reversed his conviction for money laundering, stating:
Were the payment for drugs itself held to be a transaction that promoted the unlawful activity of that same transaction virtually every sale of drugs would be an automatic money laundering violation as soon as money changed hands. Understood this way, § 1956 would have such reach that it would criminalize the *1065 very same conduct already criminalized by the drug laws.
To the extent that our holding conflicts with holdings by the Third and Ninth Circuits ... we must respectfully disagree that the mere receipt of a money transfer and the subsequent placement of case in a box can, of itself, constitute money laundering under the statute.
Id. at 485-86. In United States v. Edgmon, 952 F.2d 1206, 1213-14 (10th Cir. 1991), cert. denied, 505 U.S. 1223, 112 S.Ct. 3037, 120 L.Ed.2d 906 (1992), the court discussed Congress’ intent in creating the money laundering statute, as follows:
Like the continuing criminal enterprise statute ... Congress appears to have intended the money laundering statute to be a separate crime distinct from the underlying offense that generated the money to be laundered.... Congress aimed the crime of money laundering at conduct that follows in time the underlying crime rather than to afford an alternative means of punishing the prior “specified unlawful activity.”
The other problem Dallas notes with the State’s cases is that they all discuss the “financial transaction” subsection of the federal statute, not the “transportation” subsection analogous to the Florida Statute with which Dallas was charged. This distinction is questionable in light of the fact that both sections of the federal statute, whether conducting a financial transaction or merely transporting money, require an “intent to promote the carrying on of a specified unlawful activity.” Presumably, that phrase has the same interpretation in each section, and therefore, the State’s reliance on federal “financial transaction” cases interpreting the promotion issue would be persuasive in the transportation context. See United States v. Bohn, 281 Fed.Appx. 430 (6th Cir.2008) (rejecting Heaps and applying the Paramo rationale in the “transportation” context); United States v. Piervinanzi, 23 F.3d 670 (2d Cir.1994) (same).
To resolve this case, we do not find it necessary to adopt either of the conflicting rationales presented on the federal cases. Whether the Florida statute encompasses an intent to promote past as well as future illegal activity, the scant evidence presented in this case was insufficient to prove either. Dallas sold a piece of cocaine, put the cash in his pocket and ran. He was later caught. The State urges us to conclude that Dallas’ act of running away with the money to avoid being caught created a reasonable inference that he intended to promote the just-completed crime and to promote future drug selling. We cannot. Unlike the defendants in the cases cited by the State, Dallas did not have to cash a check or take any other action to realize a benefit. Thus, his act of running with the cash did not create an inference that he intended to promote past criminal activity because that activity was complete. Likewise, it did not create an inference that he intended to use the cash to promote future drug sales. Based on the evidence presented, such an inference would be based on pure speculation.
Accordingly, we affirm Dallas’ conviction for delivery of cocaine but reverse his conviction for unlawful transportation of currency.
AFFIRMED IN PART; REVERSED IN PART.
GRIFFIN and SAWAYA, JJ., concur.

. The trial court also denied judgment of acquittal as to delivery of cocaine but granted it as to the element of being within 1000 feet of a childcare facility.