**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 93-3280

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HAYWOOD LEE CAVALIER,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana
_____

(March 14, 1994)

Before WISDOM, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Haywood Lee Cavalier appeals his conviction for causing the conducting of a financial transaction involving the proceeds of mail fraud, with the intent to promote the carrying on of the fraud, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 2 (1988).[1]

_____

[1]    Section 1956(a)(1)(A)(i) provides:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

Section 2 provides:

Cavalier argues that the district court erred in denying his motions to dismiss the underlying indictment. Finding no error, we affirm.

## I

Cavalier's nephew, Gregory Cavalier, purchased a 1986 Chevrolet van which was insured by Allstate Insurance Corporation ("Allstate") and financed by General Motors Acceptance Corporation ("GMAC"). The nephew could not afford the monthly payments, so Cavalier took possession of the van and agreed to pay Allstate and GMAC. He did not take legal title to the vehicle because of the expenses involved in transferring title. Cavalier found that he also could not make the payments on the van. He thought of burning the van, but a friend suggested that he send it to Honduras instead. Cavalier shipped the van to Honduras, where an agent sold it for approximately $10,000.00. Gregory Cavalier then reported to Allstate that the van had been stolen. Based on the false theft report, Allstate paid GMAC $9,749.50 to satisfy the lien on the vehicle.

In an unrelated incident, Louisiana authorities charged Cavalier with possession with intent to distribute cocaine, but agreed to dismiss the charge if Cavalier cooperated in an ongoing

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

-2-

operation.  Pursuant to the plea bargain agreement, Cavalier provided information that resulted in the arrest of William Vance. With revenge as an apparent motive, Vance informed Allstate about Cavalier's insurance fraud.

Based on the use of the mail to deliver the false theft report, Cavalier was charged with aiding and abetting mail fraud, in violation of 18 U.S.C. §§ 1341, 2 (1988).  Count III of the indictment charged Cavalier with causing the conducting of a financial transaction involving the proceeds of mail fraud))namely Allstate's transfer of the check to GMAC))with the intent to promote the carrying on of the fraud, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), 2.  Cavalier filed a motion to dismiss Count III of the indictment based on his contention that Count III did not sufficiently charge a crime under §§ 1956(a)(1)(A)(i), 2. Cavalier also filed a motion to dismiss the entire indictment based on his contention that Louisiana authorities violated certain terms of his plea bargain agreement.  The district court denied both motions.

Pursuant to his guilty plea, Cavalier was convicted on all counts of the indictment and sentenced to a term of 41 months imprisonment.  On appeal, Cavalier contends that the district court erred in denying his motions to dismiss the indictment.

**II**

**A**

Cavalier initially challenges the sufficiency of Count III of the indictment. An indictment is sufficient if it contains the elements of the charged offense, fairly informs the defendant of the charges against him, and insures that there is no risk of future prosecutions for the same offense. *United States v. Arlen,* 947 F.2d 139, 144 (5th Cir. 1991), *cert. denied,* 112 S. Ct. 1480 (1992). Because Cavalier does not argue that he was not fairly informed of the charges against him or that he risks double jeopardy, we need consider only the first requirement. "Whether an indictment sufficiently alleges the elements of an offense is a question of law to be reviewed de novo." *United States v. Shelton,* 937 F.2d 140, 142 (5th Cir.), *cert. denied,* 112 S. Ct. 607 (1991).

To obtain a conviction for money laundering, the government must prove "[t]hat the defendant 1) conducted or attempted to conduct a financial transaction, 2) which the defendant knew involved the proceeds of unlawful activity, 3) with the intent to promote or further unlawful activity." *United States v. Ramirez,* 954 F.2d 1035, 1039 (5th Cir.), *cert. denied,* 112 S. Ct. 3010 (1992). Count III of the indictment states:

> On or about January 13, 1988, in the Eastern District of Louisiana, **HAYWOOD LEE CAVALIER,** (a) knowing that the monetary instrument involved represented the proceeds of some form of unlawful activity, as defined in Title 18, United States Code, Section 1956(c), (b) did knowingly and willfully conduct and cause to be conducted a financial transaction, as defined in Title 18, United States Code, Section 1956(c)(4), that is, the transfer and delivery to GMAC of check #94384986-3, in the amount of $9,749.50, by Allstate, a financial institution, as defined in Title 18, United States Code, Section 1956(c)(6), which was engaged in and the activities of which affected interstate commerce, and (c) such financial transaction did in fact involve the proceeds of

-4-

specified unlawful activity, that is, the knowing and intentional execution of the mail fraud scheme alleged in Counts 1-2 above, and (d) the defendant did so with the intent to promote the carrying on of such specified unlawful activity. All in violation of Title 18, United States Code, Section 1956(a)(1)(A)[(i)] and Section 2.

Cavalier first argues that he did not cause to be conducted a financial transaction between Allstate and GMAC because he had no dominion or control over Allstate. Cavalier cites no authority for the proposition that one must have dominion over a party to a financial transaction to actually cause the occurrence of that transaction. The facts clearly show that the sending of the false theft claim to Allstate caused Allstate to transfer a check to GMAC, thereby extinguishing GMAC's lien on the van. We therefore reject the argument that Cavalier did not cause to be conducted a financial transaction between Allstate and GMAC.[2]

Cavalier also argues that the check which Allstate transferred to GMAC did not involve the proceeds of unlawful activity because the check was used to satisfy a purely civil obligation))i.e., the lien on the van. We also find this argument without merit. The ultimate use of the check is irrelevant to determining whether the check involved the proceeds of unlawful activity. The check which

---

[2]     Cavalier also argues that § 1956(a)(1)(A)(i) applies only to one who conducts or attempts to conduct a financial transaction involving illegal proceeds, and not one who *causes* to be conducted such a transaction. Because Cavalier fails to read § 1956 in the context of § 2(b), we reject this argument. *See* 18 U.S.C. § 2(b) (providing that "[w]hoever willfully *causes* an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principle" (emphasis added)). Undoubtedly, if Cavalier himself had sent the proceeds of his mail fraud to GMAC in order to satisfy the lien, then he would have been punishable under § 1956.

Allstate transferred to GMAC resulted from the sending of the false theft report, and therefore constituted the proceeds of Cavalier's mail fraud.

Lastly, Cavalier argues that Allstate's transfer of the check to GMAC cannot demonstrate his intent to promote the carrying on of his mail fraud because the mail fraud was complete when he devised a scheme to defraud Allstate and sent via the mail a false claim to Allstate for the purpose of executing the scheme.[3]  According to Cavalier, one cannot promote a completed unlawful activity for purposes of § 1956(a)(1)(A)(i).[4]  We disagree.

In *United States v. Paramo,* 998 F.2d 1212 (3d Cir. 1993), *cert. denied,* 1993 WL 465420 (Feb. 22, 1994), the defendant made a similar challenge to his conviction under § 1956(a)(1)(A)(i), contending that a defendant cannot promote an already completed unlawful activity.  Citing the definition contained in Black's Law Dictionary))to "promote" something is to "contribute to [its] growth . . . or prosperity"))the court held that "a defendant can engage in financial transactions that promote not only ongoing or future unlawful activity, but also prior unlawful activity." *Id.* at 1212; *see also United States v. Montoya*, 945 F.2d 1068, 1071

---

[3]     *See* 18 U.S.C. § 1341; *United States v. Church,* 888 F.2d 20, 23 (5th Cir. 1988) (stating that to obtain a conviction for mail fraud, the government must prove both a scheme to defraud and the use of the mails for the purpose of executing the scheme).

[4]     In rejecting this argument, the district court found that the "satisfaction of Gregory Cavalier's debt to GMAC was an integral part of the overall [fraud] scheme involving the van." The court therefore concluded that Allstate's transfer of the check to GMAC, which satisfied GMAC's lien on the van, effectively promoted the mail fraud.

(9th Cir. 1991) (holding that a defendant can conduct a financial transaction with the intent to promote an already completed activity for purposes of § 1956(a)(1)(A)(i)). Here, the sending of the false theft report via the mail completed the specified unlawful activity of mail fraud. *See* 18 U.S.C. § 1341. It is undisputed that Allstate's transfer of a check to GMAC furthered Cavalier's scheme to defraud by extinguishing the lien on the van. We think it equally clear that by furthering the overall scheme of which the completed mail fraud was a part, Allstate's transfer of a check to GMAC contributed to the prosperity of, and therefore promoted the completed mail fraud.

Cavalier's reliance upon *United States v. Jackson,* 935 F.2d 832 (7th Cir. 1991) is misplaced. In *Jackson,* the court recognized that a person promotes a specified unlawful activity for purposes of § 1956(a)(1)(A)(i), only when he or she reinvests the proceeds thereof to further that activity. *See id.,* 935 F.2d at 842. Accordingly, the court held that a defendant's purchase of cellular phones for his personal use, made with the proceeds of his continuing drug enterprise, was not a financial transaction which promoted that enterprise. *See id.* at 841. Here, Cavalier caused to be reinvested or plowed back the proceeds of his mail fraud to promote his overall scheme to defraud Allstate))i.e., Cavalier caused Allstate to transfer a check to GMAC which extinguished the lien on the van. This was not a case of a person simply using illegally obtained funds to purchase personal items. We therefore hold that Allstate's transfer of a check to GMAC could evidence

Cavalier's intent to promote the underlying mail fraud. Accordingly, we reject Cavalier's challenge to the sufficiency of Count III of the indictment.[5]

**B**

Cavalier also contends that Louisiana authorities, in connection with a written plea bargain agreement, promised him that he would not be prosecuted for any information arising out of his cooperation. He argues that Louisiana authorities broke this promise when United States Customs officials used Vance's information to prosecute Cavalier for insurance fraud, information which Cavalier believes arose out of Cavalier's cooperation. Even assuming, *arguendo,* that Louisiana authorities made such a promise,[6] we think it clear that Vance's information did not arise out of or derive from Cavalier's cooperation. As the district court correctly pointed out, the information regarding Cavalier's insurance fraud was volunteered by Vance, and was not related to the information which Cavalier provided concerning Vance's drug

---

[5] We further summarily dispose of Cavalier's contention that § 1956 is unconstitutionally vague. "[T]he void-for-vagueness doctrine requires only that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903 (1983). As applied to Cavalier, the statute gave ample notice that the conduct he engaged in was prohibited. *See* U.S.C. § 1956(a)(1)(A)(i) (providing that a defendant must possess the intent to promote the carrying on of the specified unlawful activity).

[6] The district court found no evidence in the record to suggest that Louisiana authorities promised Cavalier immunity in return for his cooperation in the sting operation against Vance.

activities.  That Vance may have volunteered information against Cavalier as a matter of revenge is irrelevant to any immunity which Cavalier may have had.  We therefore reject Cavalier's immunity argument.

## III

For the foregoing reasons, we AFFIRM.