**GENERAL CIGAR COMPANY, INC., Plaintiff,**

v.

**CR CARRIERS, INC., Thomas B. Ross, C. Michael Cody and Paul Cleveland, Defendants.**

**Civil Action No. 95–A–1169–S.**

United States District Court, M.D. Alabama, Southern Division.

Nov. 18, 1996.

---

David B. Byrne, Jr., Robison & Belser, P.A., Montgomery, AL, James D. Harmon, Jr., The Harmon Firm, New York City, for General Cigar Co., Inc.

Dow T. Huskey, Jr., Dothan, AL, L. Drew Redden, Redden, Mills & Clark, Birmingham, AL, for CR Carriers, Inc., Thomas B. Ross, C. Michael Cody.

Anthony A. Joseph, J. Vincent Edge, Johnston, Barton, Proctor & Powell, Birmingham, AL, David M. Somers, David M. Somers & Associates, PC, Avon, CT, for Paul Cleveland.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

This cause is before the court on two Motions to Dismiss the Complaint for failure to state a claim.

The Plaintiff initiated this action on September 7, 1995 by alleging that the Defendants engaged in a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act (RICO). *See* 18 U.S.C. § 1961 *et seq.* The predicate offenses alleged under RICO are mail fraud and money laundering. *See* 18 U.S.C. §§ 1341 and 1956. The Plaintiff filed an Amended Complaint on November 8, 1995. Defendant Paul Cleveland ("Cleveland") filed the first Motion to Dismiss the Complaint on May 22, 1996, while CR Carriers, Inc., Thomas Ross, and C. Michael Cody (collectively "the Defendants") filed a separate Motion to Dismiss on June 6, 1996. Because both motions are based on General Cigar Co., Inc.'s ("the Plaintiff") alleged failure to state a claim under RICO for mail fraud or money laundering, the court will address both of the Motions to Dismiss together. For the rea-

sons herein discussed, the motions are due to be DENIED.

## II. STANDARD OF REVIEW

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232–33. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985).

## III. FACTS

The facts in this case revolve around an alleged arrangement between Cleveland and CR Carriers to defraud the Plaintiff. Cleveland was the senior vice president of operations for the Plaintiff, General Cigar. Defendants Ross and Cody were both owners and officers of Defendant CR Carriers. CR Carriers contracted with the Plaintiff to transport cigars, tobacco leaf, and waste materials from the Plaintiff's plant in Dothan, Alabama to various customers. The normal business practice of the Plaintiff is to route invoices to a freight audit company for review. The invoices then go to the Plaintiff's offices for approval. Upon approval, checks for payment are issued by the Plaintiff. Cleveland was an employee responsible for approving invoices and causing checks to be issued. If a check was approved for an amount in excess of $5,000, then an authorized person in addition to Cleveland would also have to approve the issuing of the check for payment.

According to the Plaintiff's Amended Complaint, Cleveland and the Defendants de-frauded the Plaintiff by submitting, and causing checks to be paid for, invoices for fictitious trucking services. Pursuant to an alleged arrangement between Cleveland and CR Carriers, Ross and Cody would submit, through the United States mail, invoices for trucking services which CR Carriers did not actually render. Because Cleveland had previously directed that CR Carriers' invoices were not to go to the freight audit company, but were to go directly to him, the fraudulent invoices submitted by the Defendants were approved only by Cleveland. Additionally, most of the checks to CR Carriers in payment of fraudulent invoices were for amounts less than $5,000, and so required only Cleveland's approval. Therefore, Cleveland approved CR Carriers' false invoices without the review of either the freight audit company or another authorized individual employed by the Plaintiff. Cleveland's approval of the invoices then caused the Plaintiff to issue checks to CR Carriers which were sent to CR Carriers through the United States mail. According to the Amended Complaint, the normal practice of CR Carriers was to stamp the endorsements "CR Carriers" or "For Deposit Only" on checks which were received by the company and deposit the checks in the CR Carriers' account at AmSouth Bank in Dothan, Alabama. The checks issued by the Plaintiff to CR Carriers in payment of fraudulent invoices, however, were cashed rather than deposited and bore handwritten endorsements of either "CR Carriers" or "C. Michael Cody." According to the Plaintiff, between June 1989 and July 18, 1995, 196 checks totaling an approximate sum of $889,-163.00 were issued by the Plaintiff to CR Carriers because of fraudulent invoices.

## IV. DISCUSSION

▇ To state a claim under RICO a plaintiff must allege each of the following: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. *Sedima S.P.R.L. v. Imrex, Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). To establish a pattern of racketeering activity there must be at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5). A racketeering activity is any act indictable

under certain provisions of the United States Code, including mail fraud and money laundering. 18 U.S.C. § 1961(1). Since both Motions to Dismiss focus on the allegations specific to the mail fraud and money laundering predicate acts, the court will evaluate the sufficiency of the Amended Complaint with regard to those predicate acts.

## A. *RICO MAIL FRAUD CLAIMS*

■ The essential elements of a mail fraud claim are a scheme to defraud, that the defendant "caused" a use of the mails, and that the mailing was for the purpose of executing the scheme. *United States v. Hewes,* 729 F.2d 1302 (11th Cir.1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985).

■ A claim of mail fraud as a predicate act of RICO is reviewed under the standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See Durham v. Business Management Assoc.,* 847 F.2d 1505 (11th Cir. 1988). The Rule requires that in averments of fraud, "the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The particularity rule is said to "serve an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged." *Durham,* 847 F.2d at 1511. While this is an important purpose, the application of the rule "must not abrogate the concept of notice pleading." *Id. See also Friedlander v. Nims,* 755 F.2d 810, 813 n. 3 (11th Cir.1985) (a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading).

■ Under the 11th Circuit's approach to fraud in RICO actions, allegations of date, time or place are sufficient to satisfy the Rule 9(b) requirement of particularity, but alternative means are also available. *Id.* This approach by the 11th Circuit has been described as requiring less-stringent pleading requirements than other circuits which require time, place, content of false representations, and the identity of parties. *See Aldridge v. Lily–Tulip, Inc. Salary Retirement Plan Benefits Comm.,* 741 F.Supp. 906 (S.D.Ga.) *aff'd in part* and *rev'd in part,* 953 F.2d 587 (11th Cir.1992), *cert. denied,* —— U.S. ——, 116 S.Ct. 565, 133 L.Ed.2d 490 (1995). It is with the more flexible standard adopted by the 11th Circuit in *Durham* that this court analyzes the sufficiency of the mail fraud allegations.

### 1. Cleveland

■ The well-pleaded Amended Complaint outlines Cleveland's role in the scheme as 1) insuring that there was no review by the freight audit company by routing CR Carriers' invoices directly to himself 2) approving the fraudulent invoices 3) causing checks to be issued to CR Carriers. Amended Complaint, ¶¶ 11, 12, 13.

In *Durham,* the plaintiff outlined a RICO predicate act of mail fraud by pleading that five video tapes were produced by the defendants and placed into a cassette library and then certificates of interest in the library were issued to investors. *Durham,* 847 F.2d 1505, 1511. Investors were then counseled as to how to sell the tapes and donate the proceeds to charity. *Id.* The court held that these allegations plus an attached affidavit, which reflected that correspondence in the scheme was conducted by mail, were sufficient to satisfy Rule 9(b). *Id.* at 1512. Similarly, in the instant case, the Plaintiff has outlined the mechanism of the scheme to defraud and has attached a thirty-two page exhibit which specifies the fraudulent invoice numbers, check numbers, and check amounts.

■ "[T]here is no need to specify the time and place of each mail ... communication as long as the mechanics of the underlying scheme are pled with particularity." *See Center Cadillac v. Leumi Trust Co.,* 808 F.Supp. 213, 229 (S.D.N.Y.1992). Applying this standard, one federal court evaluated a complaint alleging that fraudulent statements consisted of false invoices and held that the defendants were entitled to some indication as to which invoices the plaintiff considered fraudulent by either an indication of the date of the invoices or approximate dates of when

the invoices were received. *See American Arbitration Ass'n Inc. v. DeFonseca,* 1996 WL 363128, *10. In the instant case, the Plaintiff has annexed the thirty-two-page listing to the Amended Complaint which gives the dates during which the invoices were sent and lists each invoice number, indicating the invoices the Plaintiff considers fraudulent.

Cleveland argues that the Plaintiff's allegations with regard to the scheme to defraud do not indicate his intent to defraud; specifically, he asserts that there is no allegation that he was aware that the invoices were fraudulent nor any allegation of his motive to approve fraudulent invoices. Because one cannot know another's subjective intent, circumstantial evidence must be relied upon to indicate intent. "[T]he requirement of specific intent under the mail fraud statute is satisfied by the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension and this intention is shown by examining the scheme itself." *Sun Savings and Loan Assoc. v. Dierdorff,* 825 F.2d 187, 195–96 (9th Cir.1987) (internal quotation marks omitted); *see also Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46 (2nd Cir.1987), *cert. denied* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). The 11th Circuit has also accepted that circumstantial evidence may be used to show intent to defraud. *See Pelletier v. Zweifel,* 921 F.2d 1465 (11th Cir.), *cert. denied,* 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). In *Pelletier,* the plaintiff had not offered direct evidence of 'conscious knowing intent to defraud,' and had argued that a jury could infer intent to defraud from circumstantial evidence. *Pelletier,* 921 F.2d at 1504. The court held, however, that upon review of the record, the plaintiff did not establish intent to defraud. *Id.*

In a recent RICO civil action, the plaintiff did not allege in the complaint the defendant's specific intent to defraud, but the court held that such an allegation was not necessary because the complaint did allege a scheme involving kick backs, secret bank accounts, and cover-up letters. *See Sun Savings and Loan Assoc.,* 825 F.2d at 195. Similarly, circumstantial evidence of Cleveland's intent was alleged by the Plaintiff in this case. The Plaintiff alleged that Cleveland altered normal business practices so that he would approve CR Carriers' invoices without those invoices first being reviewed by the freight audit company. Amended Complaint, ¶ 11. Additionally, despite Cleveland's assertion to the contrary, the Plaintiff did allege a motive to defraud by stating that the scheme was enacted for the "purpose of obtaining money and property." Amended Complaint, ¶ 16.

To properly state a claim for mail fraud, the Plaintiff must also plead use of the mails in the scheme to defraud. The Plaintiff has alleged that Cleveland caused checks to be sent and delivered by the United States Postal Service to CR Carriers. Amended Complaint, ¶ 17. All that is necessary to establish a mailing is "a showing that the defendant acted with knowledge that the use of the mails [would] follow in the ordinary course of business, or where such use [could] reasonably be foreseen." *Bank of America National Trust & Savings Assoc. v. Touche Ross & Co.,* 782 F.2d 966 (11th Cir.1986) (internal quotation marks omitted). *See also American Arbitration Association,* 1996 WL 363128, at *9. ("A defendant.... need only have reasonably foreseen that a third-party would use the mails ... in the ordinary course of business as a result of the defendant's acts.") The Plaintiff has alleged that Cleveland's approval of the invoices caused the Plaintiff to issue checks which were then sent through the mail to CR Carriers. Amended Complaint, ¶ 13. Therefore, the Plaintiff has adequately alleged that use of the mails by the Plaintiff was foreseeable to Cleveland since the checks were issued as a result of Cleveland's approval of the invoices submitted by CR Carriers.

**2. CR CARRIERS, CODY, AND ROSS**

The Defendants have argued, with regard to both the mail fraud and money laundering claims, that the Plaintiff must allege claims with enough specificity to establish probable cause. For this proposition they cite a 1983 decision which requires either an averment that the defendants were convicted of the offense giving rise to the civil RICO claim, or that there be sufficient

specificity to establish probable cause to believe that they committed the offenses. *See Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667 (N.D.Ga.1983). This court, however, declines to adopt that standard, choosing instead to apply the particularity standard of Rule 9(b) as implicitly adopted for civil RICO claims by the 11th Circuit. *See Household Goods Carriers v. U.S. Dept. of Defense*, 783 F.2d 1101 (11th Cir.1986) *aff'g Hunt v. American Bank & Trust Co.*, 606 F.Supp. 1348 (N.D.Ala.1985). The court is persuaded not to adopt the probable cause requirement primarily for two reasons. One, the *Taylor* decision is now less persuasive since one of its two requirements was overruled in 1985 when the United States Supreme Court held that civil RICO claims do not require that there be a conviction for the offenses in question. *See Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 493, 105 S.Ct. 3275, 3283, 87 L.Ed.2d 346 (1985). Two, a probable cause requirement is impractical because even "the most specific allegations do not establish probable cause unless they are reliable" and it would be impractical to evaluate reliability in deciding a motion to dismiss under Rule 12. *See Schnitzer v. Oppenheimer*, 633 F.Supp. 92 (D.Ore.1985). Accordingly, this court has applied the specificity standard of 9(b) for testing the sufficiency of the Amended Complaint.

■ The Defendants assert that the Plaintiff has failed to allege their specific intent to defraud. However, as was earlier discussed, circumstantial evidence can indicate intent. *See Beck*, 820 F.2d at 50. The circumstantial evidence pleaded by the Plaintiff indicates that the Defendants participated in the scheme to defraud the Plaintiff by submitting 864 fraudulent invoices to the Plaintiff through Cleveland between June 1989 and July 18, 1995. Amended Complaint, ¶ 12. The Amended Complaint alleges that these fraudulent invoices were mainly for transportation of scrap tobacco and plastic and packaging materials which was never performed. *Id.* According to the well-pleaded Amended Complaint, once these invoices were approved, the Defendants departed from their normal business practices by endorsing the checks from the Plaintiff in handwriting, rather than by using a stamp.

Amended Complaint, ¶ 14. The checks bore handwritten endorsements of either "CR Carriers" or "C. Michael Cody." *Id.* The Defendants also departed from normal business practice by cashing, rather than depositing the endorsed checks at AmSouth Bank in Dothan, Alabama, where CR Carriers maintained its general account. *Id.* The Plaintiff's allegations reflect not only a plan implemented by the Defendants to defraud the Plaintiff, but also the motive of receiving payment as a result of this scheme. The details of the Defendants' role in the plan to defraud are much more specific than those alleged by the plaintiff in *Durham*, as discussed above.

■ With regard to the requirement under a mail fraud claim that there be an allegation of use of the mails, the Plaintiff alleges that CR Carriers, Ross, and Cody sent fraudulent invoices through the United States mails and caused them to be delivered by the United States Postal Service. Amended Complaint, ¶ 17.

While each defendant is not separately named in the Amended Complaint, other federal courts have held that similar allegations are sufficient. *See Bruss Co. v. K & S Brokerage, Inc.*, No. 91–C–1561, 1991 WL 251645 (N.D.Ill. Nov. 22, 1991) and *Klapper v. Commonwealth Realty Trust*, 657 F.Supp. 948 (D.Del.1987). In *Bruss*, the defendants operated a scheme whereby they used expired product codes to inflate their gross profit. *Bruss*, 1991 WL 251645, at *1. The defendants challenged the sufficiency of the plaintiff's fraud claim, stating that the plaintiff failed to specify by whom each of the fraudulent communications was transmitted. *Id.* at *3. The court opined that since Rule 9(b)'s purpose is to ensure the defendants are notified of the conduct complained of, alleged fraudulent acts need not be attributed to certain defendants if the "complaint sufficiently describes the acts and provides defendants with sufficient information to answer the allegations." *Id.* (quoting *Hinsdale Women's Clinic, S.C. v. Women's Health Care*, 690 F.Supp. 658, 663 (N.D.Ill.1988). In the instant case, the Plaintiff attached to the Amended Complaint a thirty-two page list of

invoice numbers and check dates and check amounts. Therefore, even if the Plaintiff does not indicate by which of the two individual defendants the invoice was submitted, the Defendants are able to answer the allegations.

## B. *RICO MONEY LAUNDERING CLAIMS*

■ A claim for money laundering under RICO requires allegations that a person conducted a financial transaction with money he knew to be the proceeds of unlawful activity, with the intent to promote the carrying on of specified unlawful activity. 18 U.S.C. § 1956(a)(1)(A)(i). *See also United States v. Flynt,* 15 F.3d 1002 (11th Cir.1994) (setting forth the same requirements).

The 11th Circuit has not clearly spoken on what standard is to be applied when judging the sufficiency of a complaint alleging a non-fraud claim under RICO. However, the Northern District of Alabama stated that, in civil RICO cases, the plaintiff alleges a pattern of racketeering activity "involving fraud and/or indictable offenses. Rule 9(b) plainly applies to RICO claims." *Hunt,* 606 F.Supp. at 1362. While it did not speak to this portion of the district court's ruling, the 11th Circuit did affirm the lower court's decision. *See Household Goods Carriers,* 783 F.2d 1101 (11th Cir.1986). Therefore, this court will evaluate the sufficiency of the mail fraud claims under Rule 9(b).

### 1. Cleveland

■ Cleveland argues that there is no allegation that he conducted a financial transaction with money he knew to be the proceeds of unlawful activity. He claims that since he did not write the checks to CR Carriers nor cash them, he did not participate in "negotiating, cashing, or causing to be cashed" the checks for payment of the fraudulent invoices.

"Conducts," is defined as "initiating, concluding, or participating in initiating or concluding a transaction." 18 U.S.C. 1956(c)(2). The Plaintiff has alleged that Cleveland's approval of the checks caused the Plaintiff to issue checks which the Defendants cashed. It is his participation in the initiating of these checks which constitutes conducting a financial transaction.

An argument similar to that of Cleveland was made by a defendant who had submitted a false car-theft claim, causing the insurance company to issue a check to pay off the lien on the car. *See United States v. Cavalier,* 17 F.3d 90 (5th Cir.1994). The Fifth Circuit rejected the defendant's argument that he did not participate in a financial transaction under 18 U.S.C. § 1956 since he had no control over whether the check was issued or not. *Cavalier,* 17 F.3d at 92. The court opined that since the sending of the false theft claim caused the check to be issued, the defendant had participated in a financial transaction. *Id.* Similarly, the Plaintiff alleged that Cleveland's approval of the fraudulent invoices not only caused his employer to issue checks, but allowed the Defendants to cash the fraudulently-issued checks. Therefore, the Plaintiff has adequately alleged that Cleveland conducted a financial transaction.

Cleveland also argues that the Plaintiff has failed to allege that he had the intent to promote the carrying on of a specified unlawful activity. Cleveland's argument is based upon a Seventh Circuit requirement that the defendant "plow back" the proceeds of the unlawful activity to further the activity. *See United States v. Jackson,* 935 F.2d 832 (7th Cir.1991). It is not clear, however, that the Jackson court intended to impose a new pleading requirement. As one court explained it, the court in *Jackson* only outlined the relationship between 1956(A)(1)(a)(i) and (A)(1)(b)(i) and did not explicitly hold that § 1956(a)(1)(A)(i) could only be violated if the defendant plowed back the proceeds of unlawful activity. *See United States v. Paramo,* 998 F.2d 1212 (3rd Cir.), *cert. denied,* 510 U.S. 1121, 114 S.Ct. 1076, 127 L.Ed.2d 393 (1994). Furthermore, other federal courts have rejected the requirement, holding that " '[p]lowing back' of the gains into the enterprise is not necessary." *United States v. Manarite,* 44 F.3d 1407, 1416 (9th Cir.), *cert. denied* — U.S. —, 116 S.Ct. 148, 133 L.Ed.2d 93 (1995); *see also Paramo,* 998 F.2d at 1218.

The courts declining to adopt the "plowing back" requirement appear to focus on circumstantial evidence of the defendant's intent. These courts have reasoned that defendants could not profit without cashing in the proceeds of their illegal activity, and so, the cashing in of the proceeds promotes the prior fraud. For instance, a defendant argued that cashing the checks he had embezzled did not reflect an intent to promote the prior embezzling of each check. *Paramo*, 998 F.2d at 1217. The court opined that a jury could find that "the cashing of each check contributed to the growth and prosperity of each preceding mail fraud by creating value out of an otherwise unremunerative enterprise." *Id.* at 1218. Other defendants making a similar argument stated that cashing in gambling chips was not a promotion of the prior chip skimming. *Manarite*, 44 F.3d at 1415–16. The court reasoned that the "chip-skimming scheme could not benefit its participants unless the chips were cashed." *Id.* at 1416. This court is persuaded that a civil RICO claim based on the predicate act of money laundering only requires an allegation that the defendant conducted a financial transaction with the proceeds of unlawful activity and does not require an allegation that the proceeds were reinvested in the unlawful activity.

In the instant case, the Plaintiff has alleged that Cleveland participated in the scheme for the "purpose of obtaining money and property." Amended Complaint, ¶ 16. This allegation reflects that Cleveland received compensation for his part in the fraudulent scheme. If the checks issued from the fraudulent invoices had not been cashed, they would have had no value to any of the defendants. Consequently, to receive compensation for his part in the scheme, Cleveland had to rely on payment from the cashed checks that were a product of the mail fraud. Through pleading Cleveland's motive and the scheme to defraud, therefore, the Plaintiff sufficiently pleaded circumstantial evidence that Cleveland intended to promote the specified unlawful activity of mail fraud.

Cleveland further argues that mail fraud and money laundering must be two separate offenses for a claim to be stated for both under RICO. For this proposition, he cites as a leading case a decision which analyzes whether convictions for money laundering and conversion are a violation of the Double Jeopardy Clause. *See United States v. Edgmon*, 952 F.2d 1206 (10th Cir.1991), *cert. denied*, 505 U.S. 1223, 112 S.Ct. 3037, 120 L.Ed.2d 906 (1992).

The *Edgmon* court did discuss Congress' intent to make money laundering a separately punishable offense, but in applying this intent, the court held that prosecution for both money laundering and conversion does not violate the Double Jeopardy Clause. *Edgmon*, 952 F.2d at 1214. The court's discussion of Congress' intent concluded with its finding that "Congress intended money laundering and the 'specified unlawful activity' to be separate offenses separately punishable." *Id.* It does not follow from this finding, however, that separately punishable offenses cannot both be punished.

One circuit does appear to interpret *Edgmon* to say that the receipt and deposit of bad checks must be separate from the underlying criminal fraud. *See United States v. Estacio*, 64 F.3d 477 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1356, 134 L.Ed.2d 523 (1992). However, in that case, the court upheld the defendant's conviction for both money laundering and bank fraud. *Estacio*, 64 F.3d at 481. The court reasoned that the defendant took part in fraud starting in June and continuing through December, so the December check kiting to perpetuate the earlier fraud was based on separate underlying unlawful activity. *Id.* Therefore, even if a "separate offense" test were applied in this case, Cleveland could still be punished for both mail fraud and money laundering since receiving proceeds from cashed checks perpetuated the earlier frauds. "[S]imply because money laundering was part of the larger scheme does not mean other criminal activities also taken in furtherance of the overall scheme may not serve as the specified unlawful activity...." *United States v. Stein*, No. Crim.–A–93–375, 1994 WL 285020 (E.D.La.1994).

### 2. CR Carriers, Ross, Cody

The Plaintiff has alleged that the Defendants conducted a financial transaction with money they knew to be the proceeds of unlawful activity, with the intent to promote the carrying on of specified unlawful activity pursuant to 18 U.S.C. § 1956(a)(1)(A)(i). Federal courts have held that cashing checks which are the proceeds of the specified unlawful activity satisfies the money laundering statute. *See Paramo,* 998 F.2d at 1216–17. In this case, the Plaintiff alleges that the checks issued for the fraudulent invoices were endorsed either "CR Carriers" or "C. Michael Cody." Amended Complaint, ¶ 14. The checks were then cashed at the AmSouth Bank in Dothan, Alabama, where CR Carriers had its general account. *Id.* Because the Plaintiff has alleged that the Defendants cashed checks which were the product of their mail fraud, the Plaintiff has sufficiently pleaded the money laundering claim.

### V. CONCLUSION

Because the Plaintiff has outlined a scheme to defraud the Plaintiff which was conducted by use of the United States mails and through which the defendants used unlawful profits to perpetuate their scheme, the Plaintiff has adequately alleged mail fraud and money laundering claims under RICO pursuant to 18 U.S.C. § 1962. Therefore, the Motion to Dismiss filed by Paul Cleveland is ordered DENIED and the Motion to Dismiss filed by CR Carriers, Thomas B. Ross, and C. Michael is also ordered DENIED.